UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
FEB 19  4 41 PM '03
U.S. DISTRICT COURT
ANN ARBOR

EUGENE BROWN,

    Plaintiff,

v

CITY OF DETROIT;
BENNY NAPOLEON, in his Personal and
Representative Capacity as Chief of Police;
WALTER SHOULDERS, in his Personal
and Representative Capacity as Deputy
Chief Detroit Police Department; and
DETROIT BOARD OF POLICE
COMMISSIONERS, Jointly and Severally,

    Defendants.

Case No. 01-71683

Honorable Gerald E. Rosen

---

William Mitchell (P31031)
SHERBOW & MITCHELL, P.C.
Attorneys for Plaintiff
23880 Woodward Avenue
Pleasant Ridge, MI 48069-1133
(248) 291-0500

E. Edward Hood (P15100)
Jill M. Wheaton (P49921)
William M. Thacker (P55916)
DYKEMA GOSSETT PLLC
Attorneys for Defendants
315 E. Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
(734) 214-7600; (313) 568-6551

---

### DEFENDANTS' MOTION IN LIMINE
### TO EXCLUDE SHOULDERS' REPORT

Defendants, by their attorneys, Dykema Gossett PLLC, bring this motion to preclude Plaintiff from introducing into evidence certain documents referred to as the "Shoulders Report"[1]

---

[1] As used herein, "Shoulders Report" or "Report" is used to identify the report issued by the Executive Board of Review regarding conduct by Plaintiff, as well as other highly confidential police memoranda analyzing the Report of the Executive Board of Review, specifically, three memoranda dated November 6 and 8, 2000, by Deputy Chief Michael Hall, and a November 20, 2000 memoranda by former Assistant Chief Marvin Winkler, Jr.



on the basis that these documents are subject to the deliberative process privilege and moreover, are irrelevant to the claims at issue in this case.

## I. STATEMENT OF FACTS

Plaintiff, a City of Detroit Police Officer, has brought suit against the City of Detroit, the Board of Police Commissioners, and present and former Police Department officials, claiming that he was denied a promotion wand a liberty interest without due process. Between the time he was hired in May of 1993 until May of 2000, Plaintiff shot and killed three people, shot and wounded one person, shot at two people and accidentally discharged his weapon three more times in the line of duty. In addition, Plaintiff was the subject of over thirty-two (32) citizen complaints during this same period. Not surprisingly, Plaintiff's record of shootings became a matter of concern for the Detroit Police Department.

As a result of concern over Brown's conduct and the adequacy of the Department's investigations thereof, Defendant former Detroit Police Chief Benny Napoleon appointed an Executive Board of Review ("EBR") consisting of high-level Police Department Executives headed by Deputy Chief Walter Shoulders, to review the actions of Plaintiff and the Police Department's response to those actions. The EBR's work consisted entirely of a critical analysis of the conduct of various members of the Police Department, including Plaintiff, and of the Department's Policies and Procedures, in particular whether existing policies regarding the use of deadly force and the investigation of such matters were sufficient. As instructed, the EBR prepared a detailed report of its analysis and conclusions (i.e., the Shoulders Report) which was submitted to former Chief Napoleon. Specifically, the Shoulders Report contains the findings and conclusions of the EBR concerning four shootings in which Plaintiff was involved, including frank criticism of the Police Department and some of its executives and employees as to the review, investigation and handling of these shootings.

2

On November 20, 2001, Plaintiff filed a motion to compel production of the Shoulders Report. Defendants opposed this motion based on the deliberative process privilege, which holds that communications by governmental entities engaging in critical and deliberative self-analysis are privileged. On January 10, 2002, the Court directed Defendants to submit the Shoulders Report to the Court for *in camera* review. On May 17, 2002, the Court granted the motion, but allowed only a very limited review of the Report. Specifically, the following conditions were imposed: (i) only Plaintiff's trial counsel, Jeffrey S. Sherbow, was allowed to view the Report; (ii) Mr. Sherbow could view this report only in the Court's chambers; would not be provided a separate copy; and could not make a copy of the report; (iii) the report could not be disclosed to any other persons, including the parties themselves, absent an express order of the Court so authorizing. On June 3, 2002, Defendants filed a Motion for Reconsideration, which was denied by the Court on July 16, 2002.

Plaintiff's counsel has since taken opportunity to view the Report. At present, the Shoulders Report remains subject to the Court's protective order and Plaintiff has failed to take any action regarding the admissibility of the Report at trial.

## II. ARGUMENT

**A. The Shoulders Report Is Subject To The Deliberate Process Privilege And Must Be Excluded From Evidence At Trial.**

As the basis for the deliberative process privilege has already been briefed at length by Defendants, an exhaustive discussion of the privilege is unnecessary. In sum, the privilege was developed to encourage law enforcement agencies and other governmental units to engage in frank and open self-critical analysis. See Ostoin v. Waterford Township Police Dept., 189 Mich. App. 334, 337, 471 N.W.2d 666 (1991) citing Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 944-47 (Ct. Cl. 1958). As explained in a recent case by the United States Supreme Court, the privilege "rests on the obvious realization that officials will not

3

communicate candidly among themselves if each remark is a potential item of discovery and front page news." Department of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 9; 121 S.Ct. 1060, 1066 (2001).

Because the Shoulders Report contains self-critical analysis of the Department's policies and procedures governing the investigation of fatal shootings involving members of the force, the deliberative process privilege is clearly applicable to the instant case. Surely, if the Shoulders Report is allowed into evidence at trial, it will have a severe chilling effect upon the Department, as well as other law enforcement agencies. Police department executives cannot be expected to engage in criticism of the department's policies and procedures if they must be concerned that own their analysis will later be used against them in a lawsuit.

By limiting review solely to an *in camera* inspection by Plaintiff's counsel, the Court wisely sought to limit the chilling effects upon the Department's internal deliberative processes. No reason, justifiable or otherwise, has been offered by Plaintiff for admitting the Shoulder's Report at trial. Moreover, much of the information contained in the Report can or has been obtained from other sources not subject to a privilege. In sum, nothing that could be offered by the Report is worth risking the privilege, especially here, where Plaintiff has wholly failed to offer any reason whatsoever to circumvent the privilege. The Shoulders Report is not relevant to the claims asserted and at issue in this case and should be precluded under Fed. R. Ev. 402.

**B.    The Shoulders Report Is Not Relevant To The Claims At Issue In This Case**

As the Court has noted, Plaintiff did not set forth any basis for seeking discovery of the Shoulders Report, let alone articulate the potential relevance of the report to the claims at issue. (May 17, 2002 Order at p.3). The Court had to take it upon itself to discern what relevance the Shoulders Report may have, concluding that the Report may have some bearing on Plaintiff's allegation that the "executive board was convened as part of an effort to dredge up unfavorable

4

information that could be used as a pretext for denying Plaintiff a promotion..." *Id.* No other theory has been asserted upon which to base a finding of relevance.

However, the Shoulders Report simply addresses the events and circumstances surrounding the various shootings involving Plaintiff over the years. <u>At no point</u> does the Report address the subjective motivations behind its analysis, nor does it address the subjective motivations of the Department in forming the EBR. And since plaintiff filed his motion to compel, he has had a chance to depose former Chief Napoleon, former Assistant Chief of Police Marvin Winkler, Deputy Chief Shoulders, and the other members of the EBR, all of which were questioned by plaintiff regarding the formation of, and the actions taken by, the EBR.

Moreover, the motivations behind the formation of the EBR, and the contents of the Report, are totally irrelevant to Plaintiff's claim that he was denied a property interest by virtue of the denial of a promotion. This is because it is the Board of Police Commissioners that has ultimate responsibility for making promotional decisions, not the EBR. The Board of Police Commissioners elected not to promote Plaintiff <u>without ever having reviewed the Shoulders Report</u>, which they have still not reviewed to this very day.

The Court seemed to acknowledge that the Report in and of itself was not relevant to Plaintiff's claims but that a limited review of the Report by Plaintiff's counsel would serve as a valuable tool in eliciting deposition testimony regarding the motivations behind the formation and purposes of the EBR, which is the area the Court found relevant. (See July 16, 2002 Order). As stated above, at this point, Plaintiff's counsel has been afforded the opportunity to review the Report and conduct depositions of the members of the EBR armed with the information contained in the Report.[2] Consequently there currently exists no theory upon which to conclude that the Report itself is relevant, is not privileged, and should be admissible at trial.

---

[2] It is noteworthy that even after having been afforded the opportunity to review the Shoulders Report, Plaintiff failed to supplement his response to Defendants Motion for Summary

5

C. **Should the Court Admit The Shoulders Report, The Court Should Implement Approprite Safeguards To Protect Its Confidentiality At Trial**

In granting Plaintiff's motion, but allowing only limited review of the Shoulders Report, the Court took the following measures to ensure the Report's confidentiality:

- Report to be produced solely to Plaintiff's lead trial counsel;
- That Plaintiff's lead counsel only be permitted to view Report in Court's chambers and was not to be provided a copy;
- That Report not be disclosed to any other persons, including the parties themselves.
- That the failure to comply with the directives of the Court would result in severe sanctions.

Clearly, the Court recognized the highly-confidential nature of the Report and the potential chilling effect its disclosure could have on the Department. In fact, the Court went so far as to state, "the small risk of a chilling effect is further diminished by virtue of a protective order ... which ensures that the Shouloders Report would be viewed by only a small number of individuals and used solely for purposes of this litigation." (See May 17, 2002 Order). The Court again emphasized its concern with protecting confidences in its July 16, 2002 Order stating: "Although the May 17, 2002 Order does 'let the genie out of the bottle,' the Court believes it has taken sufficient precautions to ensure that the genie does not stray too far."

As acknowledged by the Court, the Shoulders Report is a highly-confidential and potentially highly-prejudicial document deserving of protection. Should the Court choose to deny this motion and allow Plaintiff to admit the Report, Defendants respectfully request that current protective order be maintained with the following additions:

---

Judgment which Plaintiff was explicitly invited to do by the Court's Order of May 17, 2002. The failure of Plaintiff to supplement his Brief in Opposition to Defendants' Motion for Summary Judgment only lends credence to Defendants' assertions that nothing in the Report is of relevance to Plaintiff's claims.

6

- That the Courtroom be sealed, or the participants and jurors are to covene in a separate, closed facility; before the contents of the Report are discussed in any way;

- That the portions of the transcript in which the contents of the Report are discussed be deemed sealed;

- Any other precautionary measure aimed at keeping the contents of the Report confidential be implemented.

## CONCLUSION

For the reasons and authorities cited herein, Defendants respectfully request that this Court grant Defendants' motion and enter an Order precluding Plaintiff from introducing the Shoulders Report as evidence at trial, or from discussing or referring to its contents. In the alternative, should the Court choose to admit the Shoulders Report, Defendants respectfully request that the Court's current protective order remain in place, the courtroom be sealed as necessary to avoid the revealing of confidences contained in the Report and that the Court take any other measures that are deemed necessary to keep the contents of the Shoulders Report confidential.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: *[signature]*
E. Edward Hood (P15100)
Jill M. Wheaton (P49921)
William M. Thacker (P55916)
315 East Eisenhower Parkway, Suite 100
Ann Arbor MI 48108-3306
(734) 214-7600; (313) 568-6551

Dated: February 19, 2003

DET01\347946.1
ID\MW

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED

FEB 19  4 42 PM '03

U.S. DISTRICT COURT
ANN ARBOR

EUGENE BROWN,

    Plaintiff,

v

CITY OF DETROIT;
BENNY NAPOLEON, in his Personal and
Representative Capacity as Chief of Police;
WALTER SHOULDERS, in his Personal
and Representative Capacity as Deputy
Chief Detroit Police Department; and
DETROIT BOARD OF POLICE
COMMISSIONERS, Jointly and Severally,

    Defendants.

Case No. 01-71683

Honorable Gerald E. Rosen

_____/

William Mitchell (P31031)
SHERBOW & MITCHELL, P.C.
Attorneys for Plaintiff
23880 Woodward Avenue
Pleasant Ridge, MI 48069-1133
(248) 291-0500

E. Edward Hood (P15100)
Jill M. Wheaton (P49921)
William M. Thacker (P55916)
DYKEMA GOSSETT PLLC
Attorneys for Defendants
315 E. Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
(734) 214-7600; (313) 568-6551

_____/

## NOTICE OF HEARING

TO:    William Mitchell

Please take notice that Defendants' Motion in Limine to Exclude Shoulders Report will be brought on for hearing before the Honorable Gerald Rosen at a time and date to be set by the Court.

DYKEMA GOSSETT PLLC

By: */s/ E. Edward Hood/*

E. Edward Hood (P15100)
Jill M. Wheaton (P49921)
William M. Thacker (P55916)
315 East Eisenhower Parkway, Suite 100
Ann Arbor MI 48108-3306
(734) 214-7600; (313) 568-6551

Dated: February 19, 2003

AA01\98800.2
IDUMIJ

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•315 E. EISENHOWER PARKWAY, SUITE 100•ANN ARBOR, MICHIGAN 48108-3306

2

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
FEB 19  4 41 PM '03
U.S. DISTRICT COURT
ANN ARBOR

EUGENE BROWN,

    Plaintiff,

v

CITY OF DETROIT;
BENNY NAPOLEON, in his Personal and
Representative Capacity as Chief of Police;
WALTER SHOULDERS, in his Personal
and Representative Capacity as Deputy
Chief Detroit Police Department; and
DETROIT BOARD OF POLICE
COMMISSIONERS, Jointly and Severally,

    Defendants.

Case No. 01-71683

Honorable Gerald E. Rosen

_____/

| | |
|---|---|
| William Mitchell (P31031) | E. Edward Hood (P15100) |
| SHERBOW & MITCHELL, P.C. | Jill M. Wheaton (P49921) |
| Attorneys for Plaintiff | William M. Thacker (P55916) |
| 23880 Woodward Avenue | DYKEMA GOSSETT PLLC |
| Pleasant Ridge, MI 48069-1133 | Attorneys for Defendants |
| (248) 291-0500 | 315 E. Eisenhower Parkway, Suite 100 |
| | Ann Arbor, MI 48108 |
| | (734) 214-7600; (313) 568-6551 |

_____/

## PROOF OF SERVICE

Rebecca A. Orefice, an employee of Dykema Gossett PLLC, being first duly sworn, deposes and states that on February 19, 2003, she served a copy of *Defendants' Motion in Limine to Exclude Shoulders Report, Notice of Hearing and Proof of Service* via first class mail upon William Mitchell, SHERBOW & MITCHELL, P.C., 23880 Woodward Avenue, Pleasant Ridge, Michigan 48069.

                                                       */s/ Rebecca A. Orefice*
                                                       Rebecca A. Orefice

Subscribed and sworn to before me
this 19h day of February, 2003.

[signature]

Notary Public

RONDA DAMRON COPPERSTONE
NOTARY PUBLIC JACKSON CO., MI
MY COMMISSION EXPIRES Jan 12, 2005

AA01\98797.1
IDUMH

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY•315 E. EISENHOWER PARKWAY, SUITE 100•ANN ARBOR, MICHIGAN 48108-3306